UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REYNALDO HURTADO-MEDINA, *et al.*,

     Petitioners,

                                 Case No. 25-cv-13248
v.                                Hon. Matthew F. Leitman

KEVIN RAYCRAFT, *et al.*,

     Respondents.

_____/

## ORDER GRANTING WRIT OF HABEAS CORPUS (ECF No. 1)

Now before the Court is a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (*See* Pet., ECF No. 1.)  Petitioners are four aliens[1] who entered the United States unlawfully years ago and who have resided here without incident ever since.

In August and September of this year, federal law enforcement officers encountered and detained Petitioners as they were going about their daily lives – heading to work, riding in cars with family members, and driving with friends. Immigration and Customs Enforcement ("ICE") officers thereafter issued arrest

---

[1] The Court believes that it is more appropriate to use the term "noncitizen" to refer to Petitioners.  The Court nonetheless uses the term "alien" because that is the term used in the provisions of the Immigration and Nationality Act (the "INA") at issue in this action.  The INA is a "complex" statute whose provisions "have provoked comparisons to a morass, a Gordian knot, and King Minos's labyrinth in ancient Crete," *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (cleaned up), and using that statutory term will help minimize any potential confusion.

warrants for Petitioners and ordered them held without bond and without a bond hearing.

In this action, Petitioners contend that their detention without a bond hearing is unlawful. They say that they have a right to such a hearing under 8 U.S.C. § 1226(a) ("Section 1226(a)"), a provision of the Immigration and Nationality Act (the "INA") that, along with its implementing regulations (and subject to certain exceptions not applicable to Petitioners), grants to an alien "arrested and detained" on a "warrant issued by the Attorney General" the right to a bond hearing before an Immigration Judge.

Respondents do not contest that Section 1226(a) may apply to Petitioners. Instead, Respondents contend that Petitioners have no right to a bond hearing under Section 1226(a) because they are properly detained without bond under a different provision of the INA, 8 U.S.C. 1225(b)(2)(A) ("Section 1225(b)(2)(A)"). Section 1225(b)(2)(A) mandates detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to admission." Respondents insist that Section 1225(b)(2)(A) applies to Petitioners because an examining immigration officer determined that they were "not clearly and beyond a doubt entitled to admission" when Petitioners were "seeking admission." And Respondents contend that where, as here, Section 1226(a) and Section 1225(b)(2)(A) may both apply to an alien's circumstances, Section 1225(b)(2)(A) "takes priority" and authorizes the detention of the alien without bond and/or a bond hearing. (Resp., ECF No. 8, PageID.126.)

2

The Court agrees with Petitioners.  Their circumstances fall within the plain language of Section 1226(a): they were arrested and are being detained under warrants issued by federal law enforcement officers acting pursuant to the authority of the Attorney General.  They are therefore entitled to a bond hearing under Section 1226(a). Respondents may not hold Petitioners without such a hearing under Section 1225(b)(2)(A) because Respondents have failed to show that that statute applies to Petitioners.  More specifically, Respondents have not demonstrated that Petitioners were "seeking admission" at the time an examining immigration officer found them to be "not clearly and beyond a doubt entitled to admission."  Absent such a showing, Respondents may not detain Petitioners under Section 1225(b)(2)(A).

Accordingly, and for the reasons explained in more detail below, the Court **GRANTS** the Petition for a Writ of Habeas Corpus and **ORDERS** Respondent Kevin Raycraft, the Acting Detroit Field Office Director of ICE's Enforcement and Removal Operations, to release Petitioners by **5:00 p.m. on December 2, 2025**, unless Petitioners have received a bond hearing under Section 1226(a) by that date.

# I

The Court begins with a brief overview of Section 1225(b)(2)(A) and Section 1226(a) and their context in the INA.  That overview provides helpful background for understanding the facts and procedural history of this case.

Section 1225(b)(2)(A) appears in a section of the INA that is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225.  That section begins by identifying the class of aliens who are covered by Section 1225(b)(2)(A): "applicants for admission." 8 U.S.C. § 1225(a)(1).  It provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." *Id.*  The terms "admission" and "admitted" are defined in a different section of the INA as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1225(b)(2)(A) identifies one circumstances under which an "applicant for admission" must be detained.  It provides, subject to exceptions not relevant here, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title [(removal proceedings)]." 8 U.S.C. § 1225(b)(2)(A).  Aliens detained under Section 1225(b)(2)(A) are not entitled to bond hearings – rather, they may be released only if they are paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

4

Section 1226(a) appears in a section of the INA that is titled "Apprehension and detention of aliens." 8 U.S.C. § 1226.  The specific title of Section 1226(a) is "Arrest, detention, and release." 8 U.S.C. 1226(a).  In its entirety, Section 1226(a) provides as follows:

> (a)  Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B)  conditional parole; but
>
> (3)  may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).  The current implementing regulations for Section 1226(a) provide that an alien detained under that section "may . . . request amelioration of the conditions under which he or she may be released" – *i.e.*, a bond hearing – before an Immigration Judge. 8 C.F.R. § 1236.1(d)(1).

## II

The Court now turns to the factual background and procedural history of this case with respect to the four Petitioners.

### A

Reynaldo Hurtado-Medina is a citizen of Mexico. (*See* Pet. at ¶ 25, ECF No. 1, PageID.7.)  He entered the United States in or around 1988, when he was 15 years old, and he has resided here ever since. (*See id.* at ¶¶ 25, 34, PageID.7, 10.)  Prior to being taken into custody, Hurtado-Medina lived in Taylor, Michigan, with his four stepchildren – all of whom are United States citizens. (*See id.* at ¶¶ 34-35, PageID.10.)

On September 18, 2025, Hurtado-Medina was riding as a passenger in a car driven by his stepson when unidentified ICE officers pulled over the car. (*See id.* at ¶ 36, PageID.10-11; *see also* ICE Deportation Officer Anna Saunders Decl. at ¶ 5, ECF No. 8-2, PageID.136.)   When Hurtado-Medina "could not produce immigration documentation," the officers took him into custody. (Pet. at ¶ 36, ECF No. 1, PageID.10-11.)   The record does not contain any evidence of any statements or communications made by Hurtado-Medina to the arresting officers.

Also on September 18, 2025, ICE served Hurtado-Medina with a Notice to Appear (an "NTA") charging him as inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (*See* Saunders Decl. at ¶ 5, ECF No. 8-2, PageID.136.)  He refused to sign the NTA. (*See* Hurtado-Medina NTA, ECF No. 4-1, PageID.77-80.)  Aside from the notation that Hurtado-Medina refused to sign the NTA, the record does not contain

any evidence concerning any interaction between Hurtado-Medina and the ICE officers who issued the NTA.

After serving Hurtado-Medina with the NTA, ICE officers "also served Hurtado-Medina [with] a Form I-200, Warrant for Arrest of Alien." (Saunders Decl. at ¶ 6, ECF No. 8-2, PageID.137.)  The ICE officers then "detained Hurtado-Medina without bond under [Section 1225(b)(2)(A)]" based upon their determination that he was "an applicant for admission to the United States seeking admission and he [was] not clearly and beyond doubt entitled to admission." (*Id.*)  However, there is no evidence in the record that Hurtado-Medina told any ICE officer that he was seeking anything – much less that he was "seeking admission" into the United States – when they determined that he was, in fact, "seeking admission."  Indeed, apart from the indication on the NTA that Hurtado-Medina refused to sign that notice, the record does not reflect any specific communications of any kind by Hurtado-Medina to any ICE officer.

After the determination was made to detain Hurtado-Medina under Section 1225(b)(2)(A), he was placed into removal proceedings pursuant to 8 U.S.C. § 1229a. (*See* Pet. at ¶ 37, ECF No. 1, PageID.11.)  He is currently detained at the North Lake Processing Center in Baldwin, Michigan. (*See id.* at ¶ 36.)  He has not been offered a bond hearing. (*See id.* at ¶ 38.)  And he has not requested one because his attorney has advised him that such a request would be futile. (*See id.* at ¶ 39.)

**B**

Fernando Perez Perez is a citizen of Mexico. (*See id.* at ¶ 26, PageID.8.)  He has resided in the United States since at least 2007 and is now 41 years old. (*See id.* at ¶ 43, PageID.13.)  He is the father of three daughters who are all United States citizens, and he lived in Chicago, Illinois, prior to being taken into federal custody. (*See id.* at ¶¶ 43-44, PageID.13.)

On or about September 16, 2025, Perez Perez was driving to work in Chicago when unidentified ICE officers stopped his car. (*See id.* at ¶ 45.)  The officers took Perez Perez into custody after inspecting his Illinois driver's license. (*See id.*; *see also* ICE Deportation Officer Warren L. Hughley Decl. at ¶ 5, ECF No. 8-3, PageID.140.)  The record does not contain any evidence of any statements or communications made by Perez Perez to the arresting officers.

On September 18, 2025, ICE served Perez Perez with an NTA charging him as inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (*See* Hughley Decl. at ¶ 5, ECF No. 8-3, PageID.140-141.)  Perez Perez signed the NTA. (*See* Perez Perez NTA, ECF No. 4-1, PageID.82.)   The record does not contain any other evidence concerning any interaction between Perez Perez and the ICE officers who issued the NTA.

Around the same time that ICE officers served Perez Perez with the NTA, they "detained [him] without bond under [Section 1225(b)(2)(A)] because [he] is an

8

applicant for admission."[2] (Hughley Decl. at ¶ 6, ECF No. 8-3, PageID.141.)  There is no evidence in the record that Perez Perez told any ICE officer that he was seeking anything – much less that he was "seeking admission" into the United States – when they decided to detain him under Section 1225(b)(2)(A).  Indeed, the record does not reflect any specific communications of any kind by Perez Perez to any ICE officer.

After ICE decided to detain Perez Perez under Section 1225(b)(2)(A), he was transferred from a processing center in Illinois to the North Lake Processing Center in Baldwin, Michigan, where he remains detained. (*See* Pet. at ¶ 45, ECF No. 1, PageID.13.)  He has been placed into removal proceedings pursuant to 8 U.S.C. § 1229a.  (*See id.* at ¶ 46.)  He has not been offered a bond hearing. (*See id.* at ¶ 47,

---

[2] The declaration submitted by Respondents concerning the detention of Perez Perez says only that Perez Perez was detained because he was an "applicant for admission."  It does not say that an "examining immigration officer" ever actually determined, as required for detention under Section 1225(b)(2)(A), that Perez Perez was "seeking admission and he [was] not clearly and beyond doubt entitled to admission."  Some district courts "have identified this as a flaw in Respondents' position." *Echevarria v. Bondi*, No. CV-25-03252, 2025 WL 2821282, at *5 (D. Ariz. Oct. 3, 2025) (citing *Lepe v. Andrews*, No. 25-cv-01163, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025)).  Respondents counter that an examining immigration officer must have made the required determination because ICE completed an NTA – which gives notice of *non*-admissibility.  Because the Court determines that detention under Section 1225(b)(2)(A) is improper for the other reasons explained in this opinion, the Court need not decide now whether the detention of Perez Perez under that statute is also improper based on the omission from the Perez Perez declaration.  (The declaration submitted by Respondents concerning the detention of Christopher Polanco (discussed in more detail below) also does not say that he was detained because he was "seeking admission and he [was] not clearly and beyond doubt entitled to admission."  The Court reaches this same conclusion with respect to Polanco.)

PageID.14.)  And he has not requested one because his attorney has advised him that such a request would be futile. (*See id.* at ¶ 48.)

## C

Christopher Polanco is a citizen of Mexico.  (*See id.* at ¶ 27, PageID.8.)  He entered the United States as a minor when he was seven years old, around 2008, and has resided in the United States ever since. (*See id.* at ¶ 53, PageID.15.)  Prior to being taken into federal custody, Polanco lived in Eastpointe, Michigan. (*See id.*)

On August 28, 2025, Polanco was driving a car with one of his friends when he was pulled over by the Troy Police Department. (*See id.* at ¶ 56, PageID.16; *see also* Hughley Decl. at ¶ 5, ECF No. 8-4, PageID.144.)  During that encounter, the Troy officer learned that Polanco was undocumented, brought Polanco to lockup, and notified ICE of Polanco's immigration status. (*See* Pet. at ¶¶ 56-57, ECF No. 1, PageID.16.)  ICE took custody of Polanco the next day. (*See id.* at ¶ 57; *see also* Hughley Decl. at ¶ 6, ECF No. 8-4, PageID.144.)  The record does not contain any evidence of any statements or communications that Polanco made to either the Troy Police Department or the ICE officers who picked him up in Troy.

When ICE took custody of Polanco, it served him with two documents: a Form I-200, Warrant for Arrest of Alien, and an NTA charging him as inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (*See* Hughley Decl. at ¶ 6, ECF No. 8-4, PageID.144-145.)  He refused to sign the NTA. (*See* Polanco NTA, ECF No. 4-1, PageID.85-88.)  The record does not contain any evidence that Polanco made any

statements (apart from his refusal to sign the NTA) to the ICE officers who issued the warrant and the NTA.

After serving Polanco with the arrest warrant and the NTA, ICE officers "detained [him] without bond under [Section 1225(b)(2)(A)] because [he] is an applicant for admission." (Hughley Decl. at ¶ 7, ECF No. 8-4, PageID.145.)  There is no evidence in the record that Polanco told any ICE officer that he was seeking anything – much less that he was "seeking admission" into the United States – when they decided to detain him under Section 1225(b)(2)(A).  Indeed, apart from the indication on the NTA that Polanco refused to sign that notice, the record does not reflect any specific communications of any kind by Polanco to any ICE officer.

After the determination was made to detain Polanco under Section 1225(b)(2)(A), he was placed into removal proceedings pursuant to 8 U.S.C. § 1229a. (*See* Pet. at ¶ 58, ECF No. 1, PageID.16.)  He is detained at North Lake Processing Center in Baldwin, Michigan. (*See id.* at ¶ 12, PageID.4.)  He has not been offered a bond hearing. (*See id.* at ¶ 59, PageID.16.)  And he has not requested one because his attorney has advised him that such a request would be futile. (*See id.* at ¶ 60, PageID.17.)

## D

Finally, Bayro Ramirez-Ramos is a citizen of Guatemala. (*See id.* at ¶ 28, PageID.8.)  He came to the United States as a minor when he was 15 years old and has resided in the United States since at least 2021. (*See id.* at ¶ 64, PageID.18.)

11

Ramirez-Ramos initially entered the United States in April 2021. (*See* Saunders Decl. at ¶ 4, ECF No. 8-5, PageID.148.)  At that time, United States Border Patrol ("USBP") detained him and served him with an NTA, charging him as inadmissible under INA § 212(a)(6)(A)(i). (*See id.* at ¶ 5, PageID.148-149.)  He was detained for three weeks and then released on his own recognizance. (*See id.* at ¶ 6, PageID.149.) The record does not contain any evidence of any communications between Ramirez-Ramos and any USBP officers.

On June 1, 2023, ICE "served Ramirez-Ramos with a superseding NTA via regular mail," charging him as inadmissible under the same provision of the INA. (*Id.* at ¶ 7.)  The record does not contain evidence of any communications by Ramirez-Ramos to ICE in 2023.

"On May 01, 2025, Ramirez-Ramos appeared with his recently retained counsel for a master calendar hearing before the Detroit Immigration Court." (*Id.* at ¶ 8.)  At that time, "[a]n immigration judge reset the case to October 27, 2025, to allow Ramirez-Ramos' counsel preparation time." (*Id.*)

On September 13, 2025, Ramirez-Ramos was carpooling to his work as a roofer when the car was pulled over by ICE agents. (*See* Pet. at ¶ 66, ECF No. 1, PageID.18-19.)  The agents took Ramirez-Ramos into custody. (*See id.* at ¶ 67, PageID.19; *see also* Saunders Decl. at ¶ 9, ECF No. 8-5, PageID.149.)  The record does not contain any evidence of any statements or communications made by Ramirez-Ramos to the ICE officers.

Also on September 13, 2025, ICE agents "detained Ramirez-Ramos without bond under [Section 1225(b)(2)(A)]" based upon their determination that Ramirez-Ramos was "an applicant for admission to the United States seeking admission and he [was] not clearly and beyond a doubt entitled to admission." (Saunders Decl. at ¶ 9, ECF No. 8-5, PageID.149-150.)  There is no evidence in the record that Ramirez-Ramos told any ICE officer that he was seeking anything – much less that he was "seeking admission" into the United States – when they determined that he was, in fact, "seeking admission."

After Ramirez-Ramos was detained under Section 1225(b)(2)(A), he was placed into removal proceedings pursuant to 8 U.S.C. § 1229a. (*See* Pet. at ¶ 69, ECF No. 1, PageID.19.)  On October 15, 2025, Ramirez Ramos "appeared with counsel for a master calendar hearing" in Immigration Court. (*See* ICE Deportation Officer Anna Saunders Decl. at ¶ 11, ECF No. 8-5, PageID.150.)  At that hearing, he "admitted the factual allegations contained in the NTA, conceded removability, and Guatemala was designated as the country of removal should that become necessary." (*Id.*)  Also during the hearing, "Ramirez-Ramos indicated his intent to apply for asylum or voluntary departure in the alternative." (*Id.*)  "The immigration judge set a filing deadline of November 14, 2025, for his applications for relief, and indicated that a merits hearing date would be forthcoming by a written hearing notice." (*Id.*)

Ramirez-Ramos is currently detained pending those proceedings at the North Lake Processing Center in Baldwin, Michigan. (*See* Pet. at ¶ 68, ECF No. 1,

PageID.19.)   He has not received a bond hearing. (*See id.* at ¶ 70.)  And he has not requested one, because his attorney has advised him that such a request would be futile. (*See id.* at ¶ 71, PageID.20.)

**E**

On October 15, 2025, Petitioners filed their Petition for a Writ of Habeas Corpus in this Court under 28 U.S.C. § 2241.  (*See id.*, PageID.34-35.)  Petitioners named as Respondents: (1) Kevin Raycraft, the Acting Director of the Detroit Field Office of ICE's Enforcement and Removal Operations division, (2) the Department of Homeland Security ("DHS"), (3) DHS Secretary Kristi Noem, (4) U.S. Attorney General Pamela Bondi, and (5) the Executive Office for Immigration Review (the "EOIR").  Petitioners sued the individual Respondents in their official capacities.

In the Petition and supporting memorandum, Petitioners contend that they are entitled to bond hearings under Section 1226(a) and its implementing regulations because they were arrested and detained on warrants issued by ICE officers long after they entered the country. (*See* Petrs.' Br., ECF No. 4, PageID.54.)  Petitioners further insist that they are not subject to detention under Section 1225(b)(2)(A) and that they may not be denied a bond hearing under that statute. (*See id.*, PageID.54-55.) Petitioners finally argue that their continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. (*See id.*)  As relief, Petitioners ask the Court to issue a writ of habeas corpus "requiring that Respondents release Petitioners

14

from custody or, in the alternative, provide Petitioners with a bond hearing pursuant to 8 U.S.C. § 1226(a) within 7 days." (Pet., ECF No. 1, PageID.34.)

Respondents counter that the Court should not reach the merits of Petitioners' claims because Petitioners have failed to exhaust their available administrative remedies.  On the merits, Respondents do not dispute that Petitioners were arrested and detained on warrants issued by ICE,[3] nor do Respondents dispute that Section 1226(a) may apply to Petitioners. (*See, e.g.*, Resp., ECF No. 8, PageID.112 (stating that "ICE still would have had the lawful authority to detain them under a similar statute, 8 U.S.C. § 1226(a)").)  Instead, Respondents argue that Petitioners are *also* properly detained under Section 1225(b)(2)(A) and that that section "always takes priority when it applies." (*Id.*, PageID.126.)   Respondents further say that because Petitioners are properly detained under Section 1225(b)(2)(A), their detention does not violate the Due Process Clause of the Fifth Amendment. (*See id.*, PageID.113-114.)

On October 31, 2025, the Court held a remote hearing on the Petition, and it is now prepared to rule on the Petition.

---

[3] Respondents submitted four declarations concerning Petitioners' arrest and detention.   Two declarations – pertaining to Hurtado-Medina and Polanco – specifically provide that Petitioners are being detained in connection with arrest warrants. (*See* Saunders Decl. at ¶ 6, ECF No. 8-2, Page ID.137; Hughley Decl. at ¶ 6, ECF No. 8-4, PageID.144-145.)  Two do not mention warrants. (*See generally* Hughley Decl., ECF No. 8-3; Saunders Decl., ECF No. 8-5.)  However, Respondents have not disputed Petitioners' representation that all of them "were issued warrants." (Petrs.' Br., ECF No. 4, PageID.54.)

**III**

Before turning to the merits of this petition, the Court will first address Respondents' argument that Petitioners are not entitled to relief because they failed to exhaust their available administrative remedies. (*See* Resp., ECF No. 8, PageID.115.) More specifically, Respondents contend that Petitioners' claims fail because they have not requested that an Immigration Judge hold a bond hearing and release them. (*See id.*) The Court disagrees.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1991). But "[w]hen 'Congress has not clearly required exhaustion, sound judicial discretion governs' whether or not exhaustion should be required." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy*, 503 U.S. at 144). A court has "discretion to fashion exhaustion requirements," but it must do so "in a manner consistent with congressional intent and any applicable statutory scheme." *Id.* at 594 (citations omitted). Additionally, there are exceptions to the exhaustion requirement. One such exception exists "where pursuit of administrative remedies would be a futile gesture." *Shawnee Coal Co v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981).

Here, "[n]o applicable statute or rule requires administrative exhaustion." *Gimenez Gonzalez v. Raycraft*, No. 25-cv-13094, 2025 WL 3006185, at *2 (E.D. Mich. Oct. 27, 2025) (citing *Lopez-Campos v. Raycraft*, No. 25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025)). And "[t]he Sixth Circuit has not decided whether

16

courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 25CV01621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)).  The parties appear to agree that the decision to require administrative exhaustion in this case therefore falls to the "sound judicial discretion" of the Court. (*See* Resp., ECF No. 8, PageID.115; Petrs.' Br., ECF No. 4, PageID.70.)

Exercising that discretion, the Court declines to require Petitioners to seek release from an Immigration Judge as a condition of proceeding with their claims here because any such request to an Immigration Judge would be futile.  As Respondents candidly acknowledge, the Board of Immigration Appeals has recently issued a decision rejecting Petitioners' argument that they are entitled to a bond hearing under Section 1226(a). (*See* Resp., ECF No. 8, PageID.115.)  Respondents further acknowledge that that decision – *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) – "is binding on the agency and the immigration courts." (*Id.*)  Thus, absent intervention by this Court, an Immigration Judge would reject Petitioners' arguments that they are entitled to a hearing under Section 1226(a) and would instead conclude that he "lack[ed] authority to hear [the] bond requests or to grant bond" under Section 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I. & N. at 225.

Because seeking release from an Immigration Judge would be a "a futile gesture," *Shawnee Coal Co.*, 661 F.2d at 1093, the Court, like numerous other district

courts to have considered the issue, declines to require Petitioners to move for release on bond in Immigration Court as a precondition of seeking relief here. *See Casio-Mejia v. Raycraft*, No. 25-cv-13032, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases).

## IV

## A

A district court may grant a writ of habeas corpus to a petitioner who is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).   Here, Petitioners contend that they are being detained in violation of both the laws of the United States and the Constitution.   First, they argue that their detention without a bond hearing violates federal law because they are entitled to a such a hearing under Section 1226(a) and because Section 1225(b)(2)(A) does not authorize Respondents to detain them without providing such a hearing.   Second, they argue that their detention without a hearing violates the Due Process Clause of the Fifth Amendment.   For the reasons explained below, the Court agrees with Petitioners' statutory argument and will grant habeas relief based upon that argument.   Because the Court can resolve the Petition based upon statutory grounds, it need not and will not reach Petitioners' constitutional claim. *See Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001) ("Where a statutory or nonconstitutional basis exists for reaching a decision, as it does here, it is not necessary to reach the constitutional issue.").

**B**

As noted above, Petitioners' circumstances fall within the plain language of Section 1226(a): they were arrested within the United States and are being detained pending their removal proceedings under warrants issued by federal law enforcement officers acting pursuant to the authority of the Attorney General.  They are therefore entitled to a bond hearing under Section 1226(a) and its implementing regulations.

The Court's conclusion that Petitioners are entitled to a bond hearing under Section 1226(a) is consistent with the manner in which the Executive Branch has long interpreted that statute.  Shortly after Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (which enacted Section 1226(a) and Section 1225(b)(2)'s detention provisions), the EOIR issued regulations implementing that statute and provided in those regulations that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  And from that time until earlier this year, aliens who, like Petitioners, were arrested on warrants while present in the United States, have consistently been given bond hearings under Section 1226(a). *See Rodriguez v. Bostock*, No. 25-cv-05240, 2025 WL 2782499, at *24–25 (W.D. Wash. Sept. 30, 2025).  Thus, the Executive Branch's own actions support the conclusion that aliens in Petitioners'

19

circumstances, who have been present in this country for years or even decades prior to their current detention and removal proceedings, are entitled to a bond hearing under Section 1226(a).

## C

Respondents counter that even if Petitioners fall within the scope of Section 1226(a), they are not entitled to a bond hearing because they also fall within the mandatory detention provision of Section 1225(b)(2)(A), and that statute "takes priority" over Section 1226(a). (Resp., ECF No. 8, PageID.126.)   Respondents' argument fails because Respondents have not shown that Petitioners' circumstances fall within the scope of Section 1225(b)(2)(A).

Once again, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title [(removal proceedings)]." 8 U.S.C. § 1225(b)(2)(A).  As counsel for Respondents acknowledged during the hearing before the Court, in light of this language, the statute applies only where an alien is "seeking admission" *at the same time* an "examining immigration officer" determines that he is not clearly and beyond a doubt entitled to be admitted."[4]

---

[4] Because the only point in time that is relevant under Section 1225(b)(2)(A) is the point at which the "examining immigration officer" makes his determination under the statute, any positions that Petitioners may have taken before Immigration Judges

Respondents cannot detain Petitioners under Section 1225(b)(2)(A) because Respondents have not shown that Petitioners were "seeking admission" when ICE determined that they were not clearly entitled to be admitted. "The word 'seeking' is the present participle of the verb 'seek.' It thus has a temporal element—Petitioner[s] must have been in the process of seeking admission at the time of the inspection." *Echevarria v. Bondi*, No. CV-25-03252, 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025) (quoting *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000)). The record does not reflect that Petitioners were seeking *anything* at the time ICE made that determination. Indeed, the record does not contain any evidence that any of the Petitioners communicated anything of substance (beyond their refusal or willingness to sign the NTAs) to any ICE officer. Nor does the record contain any evidence that Petitioners engaged in any conduct directed towards ICE officers that would have communicated to those officers that they (Petitioners) were seeking admission. And the evidence that is in the record suggests that Petitioners were not seeking admission at the time they were detained. Instead, they were driving to work, riding around in cars with family and friends, and living their daily lives. They were not actively seeking any sort of relief or permission from ICE or any other government agency.[5]

---

*subsequent to* the examining immigration officer's determination are immaterial to the legality of Petitioners' detention under Section 1225(b)(2)(A).

[5] Petitioners argue that as a matter of law, they could not have been "seeking admission" because the "structure, text, and legislative history" of Section 1225 indicate that "Congress intended to limit this term to covering just the detention of

Respondents counter that, as a matter of law, Petitioners must be presumed to have been "seeking admission" when ICE determined they were not clearly entitled to be admitted. According to Respondents, this presumption emanates from the definition of "applicant for admission" in 8 U.S.C. § 1225(a)(1). As noted above, that definition (which applies to all subsections Section 1225, including Section 1225(b)(2)(A)) provides, in relevant part, that "[a]n alien present in the United States who has not been admitted … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Respondents insist that at the relevant time, Petitioners qualified as "applicants for admission" under this definition because they were all "aliens" who

---

noncitizens seeking admission *at or near the border*" (Petrs.' Br., ECF No. 4, PageID.63), and they crossed the border and entered the country long ago. During the hearing before the Court, Respondents countered that the INA employs a "fiction" under which aliens like Petitioners who entered the country *unlawfully* are treated as if they are seeking a lawful entry *at a border – i.e.*, as if they have not yet entered. Thus, Respondents contend, Petitioners could have been "seeking admission" under Section 1225(b)(2)(A) even though they have been physically present in the country for years. A number of district courts have sided with Petitioners on this issue. *See, e.g.*, *Martinez v. Hyde*, 792 F.Supp.3d 211, 220–22 (D. Mass. 2025); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *4–6 (E.D. Mich. Sept. 9, 2025). Those rulings seem consistent with the Supreme Court's statements in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), that Section 1225 generally applies "at the Nation's borders and ports of entry," while Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Id.* at 287–89. However, the Court need not and does not decide now whether "seeking admission," as used Section 1225, is limited to aliens who are encountered at a border and have not yet entered the country. The key point for purposes of the Court's analysis is that there is no evidence in the record that Petitioners were seeking *anything* at the time ICE decided to detain them under Section 1225(b)(2)(A).

were "present in the United States" and "who ha[d] not been admitted."   And Respondents contend that an "applicant for admission" is necessarily "seeking admission" – because an alien who is "applying" for admission is most certainly "seeking admission."   Simply put, Respondents contend that an "applicant for admission" is always, and of necessity, "seeking admission," and Petitioners should be deemed to have been "seeking admission" when ICE made the determination because they were "applicants for admission" at that time.   That is a serious argument.

But the Court must reject it because it violates the "cardinal principle of statutory construction" that requires a court, where possible, to avoid an interpretation of a statute that renders any "clause, sentence, or word" "superfluous" or mere surplusage. *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).   As noted repeatedly above, Section 1225(b)(2)(A) mandates detention "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines *that an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." (Emphases added.)   "As numerous courts have observed, if [as Respondents contend here] all 'applicants for admission' also are seeking admission,' then the words 'seeking admission' would be surplusage." *Alvarez Ortiz v. Freden*, __ F.Supp.3d __, No. 25-CV-960, 2025 WL 3085032, at *7 (W.D.N.Y. Nov. 4, 2025) (collecting cases).   "After all, Congress simply could have said 'if the examining immigration officer determines that *an applicant for admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.'   Instead, however,

23

Congress said that an alien who is an applicant for admission *and who is seeking admission* shall be detained if the examining immigration officer determines that he or she is not clearly entitled to be admitted." *Id.* (emphasis in original).  Thus, contrary to Respondents' contention, "'seeking admission' cannot be synonymous with 'applicant for admission.'" *Id.*  And there can be no presumption that an "applicant for admission" is "seeking admission."

### D

For all of the reasons explained above, the Court concludes that Petitioners are entitled to a bond hearing under Section 1226(a) and that Respondents have failed to show that Petitioners may be detained without such a hearing under Section 1225(b)(2)(A).[6]  Accordingly, the Court will **GRANT** habeas relief to Petitioners on the terms outlined below.

### V

For the reasons stated above, Respondent Raycraft shall release Petitioners from custody by **5:00 p.m. on December 2, 2025**, unless they have been given a bond hearing under Section 1226(a) before an immigration judge before that time.  The Court limits this grant of relief to Respondent Raycraft because, among the named Respondents, he has the most immediate connection to Petitioners' custody, and it is

---

[6] Petitioners' argument in support of their request for habeas relief go well beyond the matters addressed by the Court in this Order.  The Court acknowledges Petitioners' other arguments but need not reach them in order to resolve this case.

not necessary to direct this order to any other Respondent in order to afford Petitioners full relief.

In light of the Court's grant of relief against Raycraft, the Court **DISMISSES AS MOOT** (1) all of Petitioners' claims against Respondents other than Raycraft and (2) Petitioners' claim against Raycraft for declaratory and injunctive relief.[7]  This is a final order.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 24, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 24, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

---

[7] During the hearing before the Court, counsel for Petitioners agreed that the above-stated dismissals for mootness would be proper in the event that the Court ordered Raycraft to release Petitioners from custody if they are not given a bond hearing.